IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JAMES RIVER INSURANCE COMPANY, an Ohio corporation,<br><br>  Plaintiff,<br><br>v.<br><br>PLEASANT MEADOWS SENIOR LIVING LLC, an Illinois limited liability company, and PATRICK KEEFE, as Power of Attorney for JANET KEEFE,<br><br>  Defendants. | Case No. 2:25-cv-02269-JEH-RLH<br><br>District Judge: Hon. Jonathan E. Hawley<br><br>Magistrate Judge: Hon. Ronald L. Hanna |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff James River Insurance Company, by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure ("Rule") 57 and the Court's October 20, 2025 order (ECF No. 7), submits its Amended Complaint for Declaratory Judgment against defendant Pleasant Meadows Senior Living LLC, and states as follows:

**PARTIES**

1. James River Insurance Company ("James River") is a corporation organized under the laws of the state of Ohio with its principal place of business of business in Virginia. Therefore, James River is a citizen of Ohio and Virginia.

2. Pleasant Meadows Senior Living LLC ("Pleasant Meadows") is an Illinois limited liability company, which owns and operates a long-term nursing care facility located in Chrisman, Illinois. All of Pleasant Meadows's individual members are citizens of Illinois. Pleasant Meadow's individual members are: Kathryn Silvers, Mariam Langsner, Allen Truhlar, and Susan Truhlar.

Each of these members are natural persons and citizens of Illinois. Therefore, Pleasant Meadows is a citizen of Illinois.

3. Patrick Keefe, as Power of Attorney for Janet Keefe, is the plaintiff in the underlying lawsuit at issue in this Amended Complaint entitled *Patrick Keefe, as Power of Attorney for Janet Keefe, v. Pleasant Meadows Senior Living, LLC, an Illinois Limited Liability Company d/b/a Pleasant Meeadows Senior Living*, Case No. 2025LA6 in the Circuit Court for the Fifth Judicial Circuit of Edgar County, Illinois ("the underlying *Keefe* lawsuit"). Patrick Keefe and Janet Keefe are natural persons and reside in Illinois. Therefore, Patrick Keefe and Janet Keefe are citizens of Illinois. Patrick Keefe, as Power of Attorney for Janet Keefe, is joined in this action as a nominal defendant who may have an interest in the matters at issue, but no claims are asserted against Patrick Keefe, as Power of Attorney for Janet Keefe, or against Janet Keefe.

## **JURISDICTION AND VENUE**

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because James River, on the one hand, and each of the individual members of Pleasant Meadows, Kathryn Silvers, Mariam Langsner, Allen Truhlar, and Susan Truhlar, as well as Patrick Keefe and Janet Keefe, on the other, are citizens of different states. Further, the amount in controversy exceeds $75,000 exclusive of interest and costs. This declaratory judgment action concerns whether Pleasant Meadows is entitled to a defense and coverage for the underlying *Keefe* lawsuit. The plaintiff in the underlying *Keefe* lawsuit seeks damages in excess of $50,000 for alleged injuries that include a compression fracture of the L-1 vertebrae and other injuries, which are alleged to have caused further deterioration of her physical and mental condition. Ex. 2, at ¶20. These alleged damages, as well as the costs that would be expected to be incurred in providing Pleasant Meadows with a defense of the underlying *Keefe* lawsuit, exceed $75,000.

5. This Court has personal jurisdiction over Pleasant Meadows because it transacts substantial business in Illinois and within this District.

6. This Court has personal jurisdiction over Patrick Keefe, as Power of Attorney for Janet Keefe, because Patrick Keefe and Janet Keefe are residents of Illinois.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Pleasant Meadows operates its business within this District, the underlying *Keefe* lawsuit is pending in a state circuit court sitting within this District, and all of the claims and allegations asserted in the underlying *Keefe* lawsuit arise from conduct that took place within this District.

8. This Court has jurisdiction to issue a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, as an actual controversy exists between James River and Pleasant Meadows regarding the nature and extent of James River's coverage obligations, if any, relative to reported incidents and the underlying *Keefe* lawsuit.

## FACTS

**A.  The Policy**

9. James River issued a commercial general liability policy with a professional liability endorsement on a claims-made and reported basis to Pleasant Meadows under policy number 00137918-0 (the "Policy"). The Policy provides for a policy period of December 1, 2022 to December 1, 2023 with an original retroactive date of December 1, 2020. A true and correct copy of the Policy is attached hereto as **Exhibit 1** and incorporated herein by reference.

10. The Policy provides the following pertinent "bodily injury" insuring agreement:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or

3

       "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

  b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)    The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

    (3)    A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy peri-od or any Extended Reporting Period we provide under Section **V** – Extended Re-porting Periods.

*   *   *

11.    The Policy incorporates a General Liability Changes Claims-Made to Claims-Made And Reported endorsement that amends Section 1.b.(3) of the above-reproduced "bodily injury" insuring agreement in pertinent part as follows:

4

1. **SECTION I – COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY 1. b. (3)** is deleted and replaced with the following:

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured during the policy period and is reported to us during the policy period or during a Basic Extended Reporting Period we provide under Section V – Extended Reporting Periods and in accordance with the Duties in the Event of "Claim" or "Suit" provisions, as amended by endorsement to this policy.

12. The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

13. The Policy also incorporates a Professional Liability Endorsement (Claims-Made And Reported) endorsement that defines "occurrence" as follows:

    **13.** "Occurrence" means

    **a.** an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    **b.** acts, errors or omissions in the rendering or failure to render professional services shown in the Description of Business on the Declarations of this Policy and performed by the "Named Insured".

14. The Policy includes the following Commercial General Liability Condition:

    **2.** **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and

5

    witnesses; and

  **(3)**  The nature and location of any injury or damage arising out of the "occurrence" or offense.

  Notice of an "occurrence" or offense is not notice of a claim.

15. The Policy incorporates an Extended Reporting Period endorsement that provides in pertinent part:

 **3.**  A Basic Extended Reporting Period is automatically provided without additional charge. This period begins with the end of the policy period and ends:

  **a.**  Thirty (30) days after the end of the policy period with respect to claims reported to us, in accordance with the Duties in the Event of "Claim" or "Suit" provisions, as amended by endorsement to this policy; or

  **b.**  Thirty (30) days after the end of the policy period for all other claims.

  The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

 **B.**  **Reported "Incidents"**

16. On November 29, 2023, a representative of Pleasant Meadows sent an email to James River bearing the subject line "Keefe, Janet - Policy 00137918-0 // Pleasant Meadows," advising that a resident of the Pleasant Meadow facility, Janet Keefe, "had incidents" and attaching internal Pleasant Meadow incident reports related to Ms. Keefe.

17. Pleasant Meadow's November 29, 2023 email regarding the incident involving Ms. Keefe further advised James River that "This may form the basis of a lawsuit, as this could be considered poor care or supervision" and that "**This is being reported as a potential claim only, and kept on file in the event that a lawsuit develops**" (emphasis in original).

6

18. The incident reports attached to Pleasant Meadow's November 29, 2023 email to James River document at least three incidents involving Janet Keefe.

19. The report first notes an incident that occurred on June 13, 2023 in which Ms. Keefe was reportedly not provided all prescribed medications because of a communication error that occurred upon her admission to Pleasant Meadows's nursing facility that was resolved without any observed or recorded injuries.

20. The report next notes an incident that occurred on September 16, 2023 in which Ms. Keefe reported that a staff member raised her voice at Ms. Keefe, which upset Ms. Keefe but did not cause her any physical injuries. The report further states that an investigation was undertaken the following day that noted the incident did not result in any physical injuries to Ms. Keefe.

21. The report also notes an incident that occurred on October 18, 2023 in which Ms. Keefe reportedly fell when attempting to walk to the restroom. The report indicates that the fall resulted in a "compression fracture of L1 vertebrae."

22. These three reported incidents are collectively hereafter referred to as the "Reported Incidents."

23. Neither Pleasant Meadow's November 29, 2023 email nor the internal reports attached thereto indicate that Ms. Keefe demanded, in writing or otherwise, damages or any other compensation on account of the Reported Incidents.

24. Neither Pleasant Meadow's November 29, 2023 email nor the internal reports attached thereto indicate that Ms. Keefe demanded, in writing or otherwise, any other remedial action for any of the Reported Incidents.

25. Neither Pleasant Meadow's November 29, 2023 email nor the internal reports attached thereto indicate that Ms. Keefe, in writing or otherwise, threatened or stated an intention to institute legal action against Pleasant Meadows for any of the Reported Incidents.

26. On December 11, 2023, James River sent a letter to Pleasant Meadows acknowledging the email sent by Pleasant Meadow on November 29, 2023 relating to Ms. Keefe and reserving all rights to limit or deny coverage for the Reported Incidents as well as other reporting provided by Pleasant Meadows.

27. Among other specific reservations, James River's December 11, 2023 letter to Pleasant Meadows advised that the Reported Incidents reported by Pleasant Meadow on November 29, 2023 did not constitute written demands for damages and, as such, were not claims for which coverage would be afforded under the Policy.

28. The letter further advised that James River would take no further action until claims for the Reported Incidents were made against Pleasant Meadow and reported to James River.

C.   **The Lawsuit**

29. Patrick Keefe, as Ms. Keefe's Power of Attorney, filed the underlying *Keefe* lawsuit on August 7, 2025,. A true and correct copy of the complaint filed in the underlying *Keefe* lawsuit is attached hereto as **Exhibit 2** and incorporated herein by reference.

30. In the underlying *Keefe* lawsuit, Keefe asserts claims against Pleasant Meadows for violations of the Illinois Nursing Home Act, 210 ILCS 45/1-101 *et seq.*, and related regulations, including provisions that create liability for failure to provide adequate care, treatment, facilities, staff, documentation of care, and notification to physician.

31. In support of these claims, Keefe alleges that she suffered a fall that resulted in a compression fracture in her back on October 18, 2023 as a result of Pleasant Meadow's negligent acts or omissions.

32. Keefe also alleges that she suffered a urinary tract infection on November 23, 2023 as a result of Pleasant Meadow's negligent acts or omissions.

33. Keefe alleges that she suffered another urinary tract infection, as well as a Stage II sacral wound, on April 20, 2024 as a result of Pleasant Meadow's negligent acts or omissions.

34. Keefe further alleges that Pleasant Meadows's negligent acts and omissions caused her pain and suffering, disability, loss of normal life, medical expenses, and related expenses, for which she seeks compensatory damages and attorneys' fees against Pleasant Meadows in the underlying *Keefe* lawsuit.

   D.   **Pleasant Meadow's Reporting of the Lawsuit**

35. On or around August 18, 2025, Pleasant Meadows received service of process for the underlying *Keefe* lawsuit.

36. On or around August 18, 2025, Pleasant Meadows emailed James River, attaching a copy of the complaint filed in the underlying *Keefe* lawsuit and advising James River that Keefe had filed "an actual lawsuit" that "focuses on a 10/18/23 fall with fracture" that "was reported on 11/29/23."

37. On September 30, 2025, James River issued a letter denying coverage for the Reported Incidents and any obligation to defend or indemnify Pleasant Meadows for the underlying *Keefe* lawsuit.

38. James River has filed this Amended Complaint for Declaratory Judgment seeking a declaratory judgment that, consistent with the coverage positions James River has taken in this

matter, James River has no obligation to provide Pleasant Meadows with a defense or coverage for the underlying *Keefe* lawsuit and each of the Reported Incidents.

39. Upon information and belief, Pleasant Meadows disputes the coverage positions taken by James River and contends that James River owes it coverage obligations with respect to the underlying *Keefe* lawsuit and the Reported Incidents.

### FIRST CLAIM FOR DECLARATORY RELIEF
### No Claim First Made and Reported Within Policy Period

40. Paragraphs 1 through 39 are hereby incorporated by reference as though fully set forth herein.

41. Among its other terms, conditions, endorsements, and exclusions, the Policy provides that the "insurance applies to 'bodily injury' . . . only if" a "claim for damages because of 'bodily injury' . . . is first made against any insured during the policy period and is reported to [James River] during the policy period or during a Basic Reporting Period."

42. None of the Reported Incidents are a "claim for damages" "first made against" Pleasant Meadows during the policy period of the Policy.

43. The underlying *Keefe* lawsuit does not arise from and is not itself a claim for damages that was first made against Pleasant Meadows during the policy period of the Policy, as required by the Policy for James River to have any coverage obligation.

44. In addition to not being a claim first made during the policy period of the Policy, the underlying *Keefe* lawsuit was not reported to James River during the policy period or during a basic reporting period of the Policy, as required by the Policy for James River to have any coverage obligation.

45. Accordingly, James River is entitled to declaratory judgment that it is not obligated under the Policy to defend or indemnify Pleasant Meadows for the underlying *Keefe* Lawsuit or for any claim that has or may in the future arise from the Reported Incidents.

## SECOND CLAIM FOR DECLARATORY JUDGMENT
### Injuries Occurring After Policy Period

46. Paragraphs 1 through 45 are hereby incorporated by reference as though fully set forth herein.

47. Among its other terms, conditions, endorsements, and exclusions, the Policy provides that the "insurance applies to 'bodily injury' . . . only if" the "'bodily injury' did not occur . . . after the end of the policy period."

48. The underlying *Keefe* Lawsuit alleges Ms. Keefe suffered a urinary tract infection and a sacral wound on or around April 20, 2024, a period after the expiration of the policy period of the Policy.

49. Because this alleged bodily injury was incurred by Ms. Keefe after the expiration of the policy period of the Policy, no coverage is afforded under the Policy for such alleged bodily injury.

50. Further, to the extent that any additional bodily injury of Ms. Keefe is alleged or is proven to have been incurred by Ms. Keefe after the expiration of the policy period of the Policy, no coverage for any such alleged bodily injury is provided under the terms of the Policy.

51. Accordingly, James River is entitled to declaratory judgment that no coverage is afforded to Pleasant Meadows for any liability it may have to pay damages on account of such bodily injury incurred after the policy period of the Policy.

## PRAYER FOR RELIEF

WHEREFORE, James River Insurance Company respectfully request that this Court:

    A.    Enter a declaratory judgment that James River Insurance Company has no obligation under the Policy to defend or indemnify Pleasant Meadows Senior Living LLC against the Lawsuit or any claim that has or will arise from the Reported Incidents;

    B.    Enter a declaratory judgment that Pleasant Meadows Senior Living LLC is not entitled to coverage under the Policy for liability arising from injuries alleged in the Lawsuit that occurred after the policy period of the Policy;

    C.    Award James River Insurance Company all attorneys' fees, costs, and expenses allowed by law; and

    D.    Award James River Insurance Company such other and further relief as the Court deems just and proper.

Dated: October 30, 2025

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ *Jason R. Schulze*
Jason R. Schulze

Jason R. Schulze
Gar N. Lauerman
HINSHAW & CULBERTSON LLP
151 N. Franklin St.
Suite 2500
Chicago, IL 60606
Telephone: (312) 704-3000
Facsimile: (312) 704-3001
jschulze@hinshawlaw.com
glauerman@hinshawlaw.com

*Counsel for Plaintiff James River Insurance Company*